UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
3:23-cv-398-GNS

**MARY EITEL**     **PLAINTIFF**

**v.**

**STOLL, KEENON, OGDEN PLLC and**
**PNC Bank, N.A.**     **DEFENDANTS**

**PLAINTIFF MARY EITEL'S ORIGINAL COMPLAINT**

\*\*\*     \*\*\*     \*\*\*     \*\*\*     \*\*\*

**COMES NOW,** Plaintiff Mary Eitel ("**Plaintiff**") and files this Original Complaint against Defendant Stoll Keenon Ogden, PLLC ("**SKO**") and would show the Court the following:

### I.     Jurisdiction and Parties

1. Plaintiff is an individual domiciled in and a citizen of Dallas, Texas. Plaintiff grew up in Kentucky and lived in Kentucky at various times as an adult, including 1980 to 1984, 1992 to 2003, and 2007 to 2014.

2. The term PNC Bank as used herein includes and means First Kentucky Trust Company ("**FKT**"), original trustee of the Eitel Family Trusts and original executor of the estates of Paul T. Eitel, Sr. and Berenice Lawson Eitel. At all times when FKT was executor or trustee, FKT was a resident and citizen of Kentucky, with its officers, directors, and principal place of business in Kentucky, including any of the nexus of business being centered in Kentucky.

3. Defendant Stoll Keenon Ogden, PLLC ("**SKO**") is a professional limited liability company engaged in the practice of law and is a resident and citizen of Kentucky. SKO maintains its principal office at 300 W. Vine St. Suite 2100, Lexington, Kentucky 40507-1801 and may be

served at this address.  While SKO operates a handful of offices outside of the Commonwealth of Kentucky, the nerve center and nexus of its business operations and its principal place of business and headquarters are in Kentucky, and all previous iterations of SKO have similarly been incorporated in and maintained principal offices and citizenship in Kentucky.

4.     SKO is the resulting entity deriving from a merger between Lexington firm Stoll Keenon & Park and Louisville firm Ogden Newell Welch, PLLC in 2005 or 2006.  SKO registered as doing business as "Ogden Newell Welch" from 2005/2006 through 2010 in Kentucky.  Ogden Newell Welch, PLLC was the reformed entity of Ogden Newell Welch, a general partnership existing under the laws of Kentucky.  Ogden Newell Welch was a successor firm which was variously and previously known as Ogden Sturgill Welch, Ogden & Robertson, Ogden Robertson & Marshall, and Ogden Brown, Robertson, and Marshall.  SKO is liable to Plaintiff for the actions and inactions of the aforementioned successive predecessor entities as they relate to Plaintiff's claims against them.  For purposes of this Complaint, all references to SKO shall mean and include the prior iterations of the firm which served as scrivener of the Eitel Trusts and as legal counsel to the original executor and trustee, First Kentucky Trust Company.

5.     The Court has jurisdiction over the controversy under 28 U.S.C. §1332 as the parties are diverse and the amount in controversy is over 75,000 dollars.

## II.     Factual Background

6.     In the 1960s and 1970s, Plaintiff's grandparents, Paul Eitel Sr. ("**Paul Sr.**") and Berenice L. Eitel ("**Bee**"), created three generation-skipping trusts for their descendants: The Paul Eitel Sr. Trust Under Will ("**PTE TUW**"), the Berenice L. Eitel Trust Under Will ("**BLE TUW**"), and the Paul T. Eitel Trust Under Agreement dated May 14, 1963 ("**TUA**").  Paul Sr. died in 1970.  Bee died in 1977.  Paul Sr.'s PTE TUW contained as its initial asset, voluminous shares of Porter

Paint Company ("**PPC**") stock which Paul Sr. acquired by way of his nearly 50 year employment with PPC, including lengthy roles as president, chairman, and "right hand man" of PPC's founder, Boone Porter, Sr. ("**Boone Sr.**").[1]

7.   PTE TUW was split into two subparts, Part A which was a marital deduction trust, and Part B.  Bee, as Paul Sr.'s surviving spouse, received the net-income of the PTE TUW from 1970 until her death in 1977.  This net-income was comprised of the dividends from PPC stock, less the costs of administering the PTE TUW and TUA by First Kentucky Trust Company ("**FKT**").  Bee was also the net-income beneficiary of the TUA from 1970 to 1977, containing primarily life insurance policies which paid out on Paul Sr.'s death and were re-invested in publicly traded securities.[2]

8.   In January 2020, Plaintiff initiated legal action ("**Trustee Case**"), pro-se, against the various trustees of the PTE TUW and TUA, as well as in their management of Bee's trust, the BLE TUW.[3]  Mary's claims in the Trustee Case also centered on wasting of assets, poor investment management by trustees and outside advisers, and improper diversion of the trust assets by her father Paul Eitel Jr. ("**Paul Jr.**"), the life-tenant, as well as improper receipt of trust assets by Paul Jr.'s second-wife Marilyn Casey Eitel ("**Marilyn**") during Paul Jr.'s life.

9.   Marilyn never met the testators, nor did they know her during their lives as their daughter-in-law and mother to Paul Jr.'s children was Mary C. Eitel.  After reviewing the Trustee Case defendants' Motions for Summary Judgment in September and October of 2023 and the

---

[1] Attached hereto as <u>Exhibit E</u> is a copy of a transcript of testimony from Boone Porter, III which discloses multiple Louisville attorneys' opinions that Paul Eitel Sr. was Boone Porter, Sr.'s "right hand man, including former Ogden attorney James Coorssen and an attorney from Ogden's defense team at Boehl Stoupher and Graves; See page 36 of <u>Exhibit E</u>.
[2] It is important to note that PPC was a private company, so the stock held was private stock with no readily available market.
[3] Case No. 3:20-cv-00012 styled *Mary Eitel v. PNC Bank, et.al*. in the Kentucky Western District Court – Louisville Division before Hon. Rebecca Grady Jennings and Hon. Regina S. Edwards.

PLAINTIFF MARY EITEL'S ORIGINAL COMPLAINT AGAINST STOLL KEENON OGDEN PLLC

PAGE 3 OF 14

Trustee Case's Final Order of February 2023, for the first time ever, Mary discovered the Trustees justified almost the entirety of their tortious conduct due to the negligent drafting of the PTE TUW and TUA by SKO predecessor – Ogden Robertson & Marshall.

10. At no time prior to the Trustee Case's Final Order did Mary discover that the trustee defendants had not interpreted the PTE TUW or TUA as generation-skipping trusts as was intended by the testators, nor could she have discovered such as the various trustees failed to produce any disclosure to reveal such interpretation. Further, due to abhorrent non-disclosure by original trustee, FKT, and SKO, Mary was completely unaware of FKT's interpretation of Bee's will as it pertained to exercise of a power of appointment over the assets of the PTE TUW, depriving Plaintiff's family's side of nearly 4500 shares of PPC, which had the waterfall effect of depriving the Trusts of decades of exponentially larger capital growth and dividend production.

11. Mary did not discover these facts due to FKT's refusal to disclose material information during their management of the Trusts, nor could Plaintiff until much later in 2022 when Kentucky probate documents revealed the diversion of PPC stock to Plaintiff's aunt, Helen Rollins, in obfuscation of Bee's intentions that Helen receive nothing through Bee's will.

### III. Bad Acts of Stoll Keenon Ogden Predecessor

12. It is undisputed the PTE TUW and TUA were created by SKO predecessor-firm, Ogden, Robertson, Marshall, ("**Ogden Firm**") whose name is affixed to each trust and executed by then-firm partner, Charles A. Robertson. At all times, the Ogden Firm held itself out as an expert in wills, trusts, and estates, as firm partner Charles A. Robertson was an officer of Louisville

Trust Company and both he and Squire Ogden routinely prepared and advised on such matters, including publishing their expertise in professional periodicals.[4]

13. At the identical time of Paul Sr.'s PTE TUW and TUA being drafted by the Ogden Firm, Paul Sr.'s longtime business partner, Boone Porter, Sr. had similar generation-skipping trust ("**GST**") documents created by the Ogden Firm.[5]  Both Paul Sr. and Boone Sr. built PPC together for decades until Paul Sr. took over day-to-day management from 1950 through 1969 when Boone Sr. moved to Palm Beach, Florida.

14. PPC commonly utilized the Ogden Firm as counsel for PPC for various matters, so it was no surprise that the two most important figures of PPC both utilized the Ogden Firm for their testamentary drafting needs within the same time period in the 1960s.  Both Boone Sr. and Paul Sr. both sought to acquire and create GST instruments which had numerous benefits, namely the preservation of their large PPC stock holdings, minimization of estate and inheritance taxes in force during their lives, and to provide principal assets for their grandchildren and great-grandchildren while providing net-income to their children.

15. Unfortunately for Boone Sr. and Paul Sr., and their grandchildren, the Ogden Firm negligently drafted the testamentary documents by including the verbiage "general welfare" and "comfort" into the encroachment provisions, which led to an obfuscation of the intent in creating advantageous GST instruments to pass wealth to grandchildren and great-grandchildren as the GSTs were supposed to be restricted by an ascertainable encroachment provision.

---

[4] Attached hereto and incorporated herein as <u>Exhibit A</u> is a copy of Boone Porter, III's lawsuit against Ogden Newell Welch for professional malpractice and breach of fiduciary duty, demonstrating the law firm's history of holding itself out as an expert in wills and trusts.
[5] *Id*. showing Porter Lawsuit pleadings/citation showing Trust History and how the documents created were intended to be generation-skipping trusts.

16. In 1972, 3 years after Boone Sr. died and 2 years after Paul Sr. died, Boone Sr.'s trusts were targeted by the IRS for estate tax deficiency based on PPC stock valuations and cost basis as reported on the original estate tax returns. Boone Sr.'s son, Rev. Pat Porter ("**Rev. Porter**"), as trustee of Boone Sr.'s trusts (the "**Porter Trusts**") sought out and retained the Ogden Firm to address the tax issue with help from PPC accountant, Carl Remington. The Ogden Firm had intimate knowledge of the financials and background of PPC, and they failed to review Boone Sr.'s or Paul Sr.'s trust instruments for compliance with the law on ascertainable standards through this IRS matter.

17. By 1991, Rev. Porter and his son, Boone Porter, III ("**Boone III**") brought professional malpractice claims against the Ogden Firm's successor, Ogden Newell Welch, for having failed to draft the documents properly or to notice the alleged defects in the encroachment provisions at multiple instances in which the Ogden Firm or Ogden Newell Welch were involved in matters with Rev. Porter or the Porter Trusts. This Porter Litigation was initiated after a prominent attorney in Louisville, Rucker Todd of Brown Todd and Heyburn, noticed the alleged defect and pointed it out to Rev. Porter. Most poignant to Plaintiff's claims against SKO, the Ogden Firm argued in the Porter litigation that "general welfare" was in fact an ascertainable standard and that the Porter Trusts maintained their status as GST to be free from more than one round of estate taxes and to assure growth of the principal assets for enjoyment by the great grandchildren of Boone Porter Jr.[6] Worse off, SKO argued the exact opposite in the Trustee Case on behalf of successor trustee of the Eitel Trusts, South State Bank, N.A., reversing course and claiming that South State Bank, N.A.'s distribution of Eitel Trusts principal was legally

---

[6] Exhibit B and Exhibit C, are true and correct copies of pleadings by the Ogden Firm and Ogden Newell Welch from the Porter Litigation arguing that it is a fact question at minimum as to whether "general welfare" is an ascertainable standard.

permissible because "general welfare" and "comfort" were not ascertainable standards and that the Eitel Trusts were no GST.

18. In the Course of the Porter litigation, the Porter plaintiff's revealed that SKO attorneys utilized dictation from the lawyers to create testamentary instruments and that the secretary, Mildred Robertson, would type the instruments and would not seek any review by the attorney to assure that the instrument based on dictation accurately reflected the testators wishes and the attorney's wishes.[7]

19. From 1970 through 1982, the Ogden Firm was the attorney for FKT in its role as executor and trustee of the estates and trusts created by the Paul Sr. and his wife, Bee.

20. From 1970 through 1977, Bee as initial net-income beneficiary of the PTE TUW and TUA received only net income and received zero principal distributions, living comfortably and evidencing an intent by Paul Sr. and Bee that the principal assets be preserved and not encroached upon.

21. Initiating and internal documents produced in the Trustee Case demonstrate FKT believed the Eitel Trusts to be generation-skipping trusts during their tenure as executor and trustee.

22. Subsequent communications disclosed by Trustee Case defendant South State Bank, N.A. reveal that the second net-income beneficiary, Paul Jr., specifically recalled that the trusts were created as generation-skipping trusts for tax benefits via emails to Plaintiff in 2005.

---

[7] Exhibit D, a copy of the Mildred Robertson deposition revealing the subpar scrivener practices of the Ogden Firm in having secretaries type the legal instruments without review by the attorneys.

PLAINTIFF MARY EITEL'S ORIGINAL COMPLAINT AGAINST STOLL KEENON OGDEN PLLC

## Count I: Professional Malpractice

23. Plaintiff incorporates and restates paragraphs 1 through 23 of the Complaint as if fully set forth below.

24. As attorney for FKT in its capacity as Executor and Trustee for the estates and wills of Paul Sr. and Bee, SKO had legal fiduciary duties of care owed to the intended beneficiaries of the wills and trusts of Paul Sr. and Bee, especially Plaintiff as a vested beneficiary of the remainder interest in the principal assets in the estates of Paul Sr. and Bee. These duties included a duty of care to advise FKT on proper interpretation of the Trusts, to proactively apprise FKT and the beneficiaries of any potential issues with the Trusts' verbiage or interpretation as it pertained to either the law or to assure compliance and adherence to the intentions of the testators, Paul Sr. and Bee.

25. As scrivener of Paul Sr. and Bee's estate planning instruments, SKO owed a legal fiduciary duty to Paul Sr. and Bee and their intended beneficiaries, namely Plaintiff as their grandchild and vested remainder beneficiary of the principal assets, to assure that Bee properly exercised the power of appointment conferred upon her by Paul Sr. via his Will, drafted by SKO predecessor the Ogden Firm.

26. SKO breached its duties to Plaintiff by cavalierly injecting legalese verbiage into the trusts of Paul Sr. and Bee, namely "general welfare" and "comfort," with full knowledge such terms would potentially obfuscate Paul Sr. and Bee's intentions that their grandchildren receive the principal assets as vested remainder beneficiaries while their child, Paul Jr. received the net-income for life under what was intended to be a GST with an ascertainable standard to preserve tax benefits and principal for grandchildren.

27. SKO further breached its duties to Plaintiff by failing to properly counsel FKT and Bee in the proper exercise of her Power of Appointment over Part A of Paul Sr.'s PTE TUW assets which included close to 20,000 shares of PPC privately held stock. Bee's 1976 Will and 1977 Codicil demonstrated Bee's full intent that Helen Rollins, her daughter, receive nothing by way of her Will, yet SKO breached its duties to Plaintiff by failing to advise FKT or Bee on how to assure her exercise of the Power of Appointment accomplished this wish.

28. Due to SKO's failure as counsel to FKT as executor and trustee, to suggest Bee modify her own trust under will, the BLE TUW, SKO caused Bee to exercise the Power of Appointment over Part A in a way which resulted in Helen Rollins receiving half of Part A's assets in 1982, via Bee's exercise of the power in her will, a clear obfuscation of Bee's clear intent to provide Helen with nothing.[8]

29. SKO's breach of duty to Plaintiff as intended beneficiary caused her share of the PTE TUW to be deprived of roughly 4500 shares of PPC stock, causing significant financial harm which had a waterfall effect of depriving the Trusts of financial growth over time and additional dividends to be provided over time.

30. SKO's failure to exhibit the skills of a reasonably prudent attorney in drafting estate documents led to the injection of inappropriate verbiage in the Trusts' governing instruments which had a subsequent effect of causing subsequent trustees to believe the Trusts as not being GST – contrary to the intent of the settlors to provide principal for their grandchildren, Plaintiff and her brother Paul III (non-party).

---

[8] Bee specifically demonstrated in her will that Helen was already otherwise well provided for, as she had married a rich man, Douglas Rollins of Harvard University, and she had no need for the assets in Part A.

**PLAINTIFF MARY EITEL'S ORIGINAL COMPLAINT AGAINST STOLL KEENON OGDEN PLLC**

31. Upon information and belief, SKO was the scrivener of Bee's Will, as the typeface is identical to the typeface on Paul Sr.'s testamentary instruments and SKO was already counseling FKT in its role as trustee of Paul Sr.'s trusts from 1970 through 1977. Upon information and belief, SKO became aware of the drafting error in Paul Sr.'s testamentary instruments, hence why Bee's 1976 will and the BLE TUW reflect a verbatim recitation of the ascertainable standard language for GST instruments under the Internal Revenue Code as it existed in 1976 and 1977. Further, as Kentucky law was clear by Supreme Court rule handed down in the 1960s, FKT could not have been the scrivener of Bee's BLE TUW as it was considered the unauthorized practice of law for banks to draft estate planning documents.

32. SKO's failure to continually review the estate documents of its client, FKT, and advise the holder of a power of appointment or the beneficiaries like Plaintiff, that there could be a drafting error, led to the systemic and rampant withdrawal of principal assets of the Trusts by successor trustees who interpreted the negligently placed verbiage as not constituting ascertainable standards and that Paul Sr.'s and Bee's planning documents were not construed as GST as they were intended to be.

33. At all times, SKO's breaches of duty owed to Plaintiff constituted fiduciary concealment of material information from Plaintiff under KRS 413.190 and any and all alleged defenses of time are not available to SKO.

### Count II: Aiding and Abetting Breach of Fiduciary Duty

34. Plaintiff incorporates paragraphs 1 through 33 as if set forth fully herein.

35. At all times relevant hereto, SKO's conduct as described in Count I constituted an act of aiding and abetting FKT's breach of fiduciary duties to Plaintiff. At all times FKT was a fiduciary executor and trustee, owing fiduciary duties of care and loyalty to Plaintiff, and SKO

aided and abetting FKT in breaching those duties by failing to advise FKT to disclose the existence and meaning of the Trusts to Plaintiff from 1975 forward, as she was a vested beneficiary entitled to material information about the Trusts.

36.     SKO similarly aided and abetted FKT in breaching its fiduciary duties to Plaintiff by failing to advise FKT to disclose the legal interpretation by FKT of the Trusts as GSTs as demonstrated in FKT internal documents, or failing to advise FKT to disclose the existence of Plaintiff's ability to seek assistance with health, education, maintenance, support, general welfare, or comfort, from the Trusts.

37.     SKO also aided and abetted FKT's breach of fiduciary duties to Plaintiff by failing to advise FKT to disclose the decision to distribute half of the PTE TUW Part A to Helen Rollins under Bee's Will even though Bee's will clearly and unequivocally stated Bee's intent that Helen Rollins take nothing through Bee's will.

38.     SKO similarly aided and abetted FKT's breach of fiduciary duty when SKO failed to advise FKT to disclose to Plaintiff the intention to sell the entirety of the PPC portfolio and to refrain from making the decision.  A full reading of the PTE TUW demonstrates FKT, as trustee, had the full power to retain PPC stock in the PTE TUW as the exclusive asset, and to be protected from liability for failing to take an action which was not concurred in by net-income beneficiary in 1981 and 1982 – Paul Jr.  SKO aided and abetted FKT's breach of loyalty and due care to Plaintiff by permitting FKT to sell all of the PPC shares in the Eitel Trusts back to the PPC employee stock ownership plan and/or PPC itself, as both were clients of FKT already and making such a sale violated FKT's duties of care and loyalty to Plaintiff by putting the interests of FKT and its other clients above those of Plaintiff's interests in the principal assets of the Eitel Trusts.

39.     SKO further aided and abetted FKT's breach of fiduciary duties to Plaintiff by not counseling FKT to avoid wholesale liquidation of PPC stock as both SKO and FKT had inside information on PPC's financials and knew full well that sale of the PPC stock in 1982 was eminently ill-advised.  SKO had a working relationship with PPC as a frequent counsel to the company as well as having drafted and assisted Boone Porter's family trusts with an IRS issue which also had the potential to cripple PPC, and SKO was well aware of the potential impact of such a sale of so many thousands of shares on both the Eitel Trusts' ability to grow and provide ever-increasing dividends and capital appreciation, as well as on prior clients like the Porter Trusts, PPC, and the PPC employee stock ownership plan administered by FKT.

40.     At all times, SKO's aiding and abetting breaches of duty constituted fiduciary concealment of material information from Plaintiff under KRS 413.190 and any and all alleged defenses of time are not available to SKO.

### Count III: Breach of Fiduciary Duty by SKO

41.     Plaintiff incorporates paragraphs 1 through 40 as if set forth fully herein.

42.     All conduct and behavior as pleaded against SKO for Professional Malpractice and Aiding and Abetting breach of fiduciary duties simultaneously constitute breaches of fiduciary duties to Plaintiff.

43.     As scrivener, and as counsel to the executor of Paul Sr.'s and Bee's wills and trustee of the Trusts, SKO owed fiduciary duties of care, loyalty, disclosure, and prudence to Plaintiff, as plaintiff was a clear and intended beneficiary of Paul Sr.'s and Bee's testamentary instruments.

44.     As described herein, SKO violated its duties to Plaintiff by failing to disclose the Trusts to Plaintiff, failing to advise her of the legal meaning and interpretation of the Trusts' terms, failing to appropriately counsel FKT in its fiduciary obligations of care, loyalty, disclosure, and

prudence to avoid improper interpretations of the terms of the estate planning instruments, failing to refrain from imprudent investment decisions, and failing to properly advise its net-income beneficiary client, Bee, on how to properly exercise her power of appointment to accomplish the goal of assuring Helen Rollins did not receive assets through Bee's will.  Further SKO violated duties to Plaintiff by permitting sale of Eitel Trust assets to other clients of FKT, as well as failing to advise FKT on assuring Bee properly created her will to reflect her intentions and to adequately conform her intentions with proper verbiage and terms in Bee's will.

45. At all times, SKO's breaches of duty constituted fiduciary concealment of material information from Plaintiff under KRS 413.190 and any and all alleged defenses of time are not available to SKO.

**WHEREFORE,** Plaintiff Mary Eitel, respectfully requests judgment as follows:

On Count I, Count II, and Count III, all damages incurred by Plaintiff including but not limited to all actual damages and consequential damages of Defendants' tortious conduct including but not limited to loss of value, lost of opportunity of investment or reinvestment, lost investment gains, interest, damages for capital losses incurred by imprudent sale of trust assets, and the consequential damages of inappropriate trust distributions by successor trustees as well as judicial pre and post judgment interest by law, and in amounts to be proven at trial.  Plaintiff further seeks judgment against the Defendants for recovery of costs and expenses incurred in bringing this action, including all reasonable and necessary attorney fees and costs.  Plaintiff further respectfully requests a trial by jury on all issues so triable, and all other relief at law or in equity to which she may be justly entitled.

Respectfully submitted,

*Leon H. Horne, III*

_____
Leon H. Horne, III
Law Office of Leon Horne
3232 McKinney Ave.
Suite 500
Dallas, TX 75204
Telephone: 646-491-2356
Email: hil@hornelaw.org

*Counsel for Plaintiff*