UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00398-GNS

MARY EITEL                                                                              PLAINTIFF

v.

STOLL, KEENON, OGDEN PLLC
as successors-in-interest to Ogden, Robertson, Marshall                  DEFENDANT

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Dismiss (DN 21) and Plaintiff's Motion for Leave to File an Amended Response (DN 31).[1]  The motions are ripe for adjudication.

### I.   BACKGROUND

This case concerns allegations by Plaintiff Mary Eitel ("Plaintiff") that the predecessors of Defendant Stoll Keenon Ogden ("SKO")[2] negligently drafted three trust agreements (collectively the "Eitel Trusts") created in the 1960s and 1970s by Plaintiff's grandparents, Paul T. Eitel Sr. and Berenice L. Eitel.  (Am. Compl. ¶ 6, DN 15).  In a related 2020 case pending before this Court, Plaintiff sued fourteen defendants ("Trustees"), each of whom was responsible for managing the

---

[1] In Plaintiff's motion, she seeks leave to file an amended response to Defendant's motion to dismiss due to issues with CM/ECF causing irregularities with the footnotes and attachments in her original response. (Pl.'s Mot. File Am. Resp. 4-5, DN 31).  Defendant has not opposed the motion, which is granted, and the Court will consider the amended response in addressing Defendant's motion.

[2] The firm was previously known as Ogden, Sturgill & Welch; Ogden & Robertson; Ogden Robertson & Marshall; and Ogden, Brown, Robertson & Marshall.  (Am. Compl. ¶¶ 3, 5).

1

Eitel Trusts for some period of time over the past several decades.[3] *See Eitel v. PNC Bank, N.A.*, No. 3:20-CV-12-RGJ, 2023 WL 2230866 (W.D. Ky. Feb. 24, 2023) [hereinafter *Eitel v. PNC*].[4]

In *Eitel v. PNC*, Plaintiff contended that she was injured by the Trustees' mismanagement of the Eitel Trusts, alleging trust assets, including Porter Paint Company ("PPC") stock, was sold in the 1980s for an unfairly low price and that principal funds were improperly distributed over many years to her stepmother and father, Paul Eitel Jr. ("Junior"). *Eitel*, 2023 WL 2230866, at *4. Plaintiff's claims in *Eitel v. PNC* and in the current case are based on her assertion that her grandparents intended the Eitel Trusts to be generation-skipping (i.e., primarily to benefit their grandchildren, including Plaintiff), and thus the sale of PPC stock and distributions from the principal violated this intent. (Am. Compl. ¶¶ 6-8, 28). This Court granted summary judgment for the Trustees in *Eitel v. PNC* on Plaintiff's claims of breach of fiduciary duty, negligence, breach of duty of good faith and fair dealing, and RICO violations.[5] *Id.* at *22. The Court held that each of these claims against the Trustees had either been abandoned or were barred by the statute of limitations, as Plaintiff had actual or constructive knowledge of her alleged injuries by the various defendants at least 16 years prior to bringing the suit. *Id.* at *10-13.

After Plaintiff's claims in *Eitel v. PNC* were dismissed, Plaintiff initiated this litigation against SKO on August 1, 2023. Plaintiff asserts that she filed this action based upon knowledge she gained from this Court's final order granting summary judgment in *Eitel v PNC*. (Am. Compl. ¶ 9). Plaintiff says that she was first made aware via the Trustees' summary judgment motions (in

---

[3] The Eitel Trusts were initially managed by First Kentucky Trust Co., now known after several mergers as PNC Bank ("PNC"). (Am. Compl. ¶¶ 2, 6).

[4] A detailed discussion of the timeline of events and Plaintiff's complaints related to the establishment and management of the Trusts is set forth in the memorandum opinion and order in *Eitel v. PNC*. *See id.* at *1-9.

[5] A motion to alter or amend judgment is pending in the related case. Pl.'s Mot. Alter Am. J., *Eitel v. PNC Bank, N.A.*, No. 3:20-CV-12-RGJ (W.D. Ky. Mar. 24, 2023), DN 430.

2

September and October 2022) and this Court's memorandum opinion (in February 2023) that the Trustees did not interpret the Eitel Trusts to be generation-skipping trusts. (Am. Compl. ¶¶ 9-10). In the current case, Plaintiff alleges that SKO's predecessor did not properly draft the Eitel Trusts according to the Eitel family's intent which subsequently caused Plaintiff harm through the Eitel Trusts' mismanagement by the Trustees. (Am. Compl. ¶ 26). Plaintiff posits that SKO committed professional malpractice by negligently drafting the Eitel Trusts and failing to properly advise the Trustees (Count I); that SKO aided and abetted PNC's breach of fiduciary duties (Count II); and that these actions also constitute a breach of SKO's own fiduciary duty to her (Count III). (Am. Compl. ¶¶ 26, 35, 42). All these claims are asserted under Kentucky statutes and common law. (Am. Compl. ¶¶ 25-51).

## II. JURISDICTION

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount in controversy exceeds the sum of $75,000.00.

## III. STANDARD OF REVIEW

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint is subject to dismissal if it "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Traverse Bay Area Intermediate Sch. Dist. v. Mich. Dep't of Educ.*, 615 F.3d 622, 627 (6th Cir. 2010) (internal quotation marks omitted) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A complaint will be dismissed pursuant to Rule 12(b)(6) if no law supports the claim made, if the facts alleged are insufficient to state a claim, or if the face

of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64).

When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). Notwithstanding this presumption, "the district court need not accept a bare assertion of legal conclusions." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted). A claim becomes plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

Factual matters outside of the pleadings and related litigation are not appropriate to consider in ruling on a Fed. R. Civ. P. 12(b)(6) motion. *See Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999) (citation omitted). This rule, however, has limitations. The Court need not accept factual allegations as true when they are clearly rebutted by evidence relied upon by the complaint itself. *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) ( "When a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998))). Further, the Court may consider "exhibits attached to [a] defendant's motion to dismiss so long as they are referred to in the [c]omplaint and are central to the claims contained therein." *Clark v. Stone*, 998 F.3d 287, 296-97 (6th Cir. 2021) (second alteration in original) (citations omitted). It is appropriate in ruling on a 12(b)(6) motion to consider public records associated with an underlying action that is central to a complaint, even when the complaint itself does not make explicit reference to the underlying action. *See Cain v. Thompson*, No. 3:19-

4

CV-00181, 2020 WL 42897, at *3 (W.D. Ky. Jan. 3, 2020) ("Plaintiffs cannot rely on their own vagueness, however, to avoid a dismissal on statute of limitations grounds. . . . [A] 'court may consider matters of public record in deciding a motion to dismiss without converting the motion to one for summary judgment.'" (internal citation omitted) (quoting *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007))).

In the current case, Plaintiff relies heavily on docket entries in *Eitel v. PNC* to establish the date of her initial discovery of SKO's alleged wrongdoing. (*See* Am. Compl. ¶¶ 8-9). Specifically, Plaintiff cites information obtained from the Trustee's motions for summary judgment and this Court's ruling in *Eitel v. PNC*. (Am. Compl. ¶¶ 8-9 ("At no time prior to the [*Eitel v. PNC*]'s Final Order did [Plaintiff] discover that the trustee defendants had not interpreted the PTE TUW or TUA as generation-skipping trusts, as was intended by the testators . . . .")). In response, SKO has provided reference to additional exhibits from *Eitel v. PNC* to refute Plaintiff's timeline regarding when she acquired knowledge of her claims. Determining whether the statute of limitations bars Plaintiff's claims in the current case will turn upon when Plaintiff acquired the requisite knowledge of the causes of action. Consistent with the parties' arguments, the Court will consider public records, including pleadings from *Eitel v. PNC* in evaluating SKO's motion to dismiss.

## IV. DISCUSSION

### A. Statute of Limitations

#### 1. *The Applicable Statute*

The parties disagree as to the applicable statute of limitations for Plaintiff's professional malpractice claim (Count I). While Plaintiff contends that the claim is subject to KRS 413.190,

5

SKO maintains that the proper statute of limitations is KRS 413.245. (Am. Compl. ¶ 39; Pl.'s Am. Resp. Mot. Dismiss 17, DN 31-1[6]; Def.'s Mot. Dismiss 16 n.11).

Under Kentucky law, KRS 413.245 is the "exclusive statute of limitations governing claims of attorney malpractice." *Abel v. Austin*, 411 S.W.3d 728, 737 (Ky. 2013) (emphasis omitted). The statute provides:

> Notwithstanding any other prescribed limitation of actions which might otherwise appear applicable, except those provided in KRS 413.140, a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured. Time shall not commence against a party under legal disability until removal of the disability.

KRS 413.245.

"Professional services" include "any service rendered in a profession required to be licensed, administered and regulated as professions in the Commonwealth of Kentucky, except those professions governed by KRS 413.140." KRS 413.243. The practice of law is clearly included as a professional service under KRS 413.243, and thus any claims related to "act[s] or omission[s]" of said professional services share the same one-year time limit. *See Abel*, 411 S.W.3d at 739 (recognizing that KRS 413.245's one-year statute of limitations applies to all of the plaintiffs' claims against their former attorney and law firms, including fraud, misrepresentation, and breach of fiduciary duty). In the current case, Plaintiff's claims of SKO's aiding and abetting and breach of fiduciary duty arise from the same professional services rendered by SKO as

---

[6] Plaintiff claims there is a fraud exception for legal malpractice actions that would move the claim of professional malpractice from KRS 413.245 to KRS 413.190. (Pl.'s Am. Resp. Def.'s Mot. Dismiss 17-19). However, Plaintiff raises these fraud claims for the first time in her amended response; neither the Complaint nor Amended Complaint asserts a cause of action for fraud. (Pl.'s Am. Resp. Def.'s Mot. Dismiss 17-19; Compl.; Am. Compl.).

Plaintiff's professional malpractice claim. As such, KRS 413.245 is the exclusive statute of limitations for all three of Plaintiff's claims.

Notably, the limitations period under KRS 413.245 begins to run against a claimant upon the later of: (1) the accrual of the cause of action; and (2) the discovery of the cause of action. *Queensway Fin. Holdings Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 147 (Ky. 2007). An injury under the statute accrues where "negligence and damages have both occurred." *Id*. (quoting *Nw. Nat'l Ins. Co. v. Osborne*, 610 F. Supp. 126, 128 (E.D. Ky. 1985)). Here, Plaintiff alleges that the Eitel Trusts were made in the 1960s and 1970s, the PPC stock was sold in 1982, and the allegedly improper distributions from the principal of the Eitel Trusts ended upon the death of Junior in 2018. (Am. Compl. ¶¶ 5, 45; Def.'s Mot. Dismiss 4). Therefore, there is no doubt that the claims accrued at least several years before this lawsuit under the first prong of KRS 413.245. Accordingly, Plaintiff relies on the second prong of KRS 413.245, which provides that the statute of limitations begins to run when the cause of action is discovered or should have been discovered. (Am. Compl. ¶ 8); *Queensway*, 237 S.W.3d at 148. Under the discovery rule, Plaintiff must have asserted her claims within one year after her actual or constructive knowledge of the cause of action.

Significantly, "the discovery rule does not operate to toll the statute of limitations to allow an injured plaintiff to discover the identity of the wrongdoer unless there is fraudulent concealment or a misrepresentation by the defendant of his role in causing the plaintiff's injuries." *McLain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky. App. 1999) (citing *Resthaven Mem'l Cemetery, Inc. v. Volk*, 150 S.W.2d 908, 912 (Ky. 1941)). As a result, "[a] person who has knowledge of an injury is put on 'notice to investigate' and discover, within the statutory time constraints, the identity of the

tortfeasor." *Id.* (citing *McCollum v. Sisters of Charity of Nazareth Health v. Corp.*, 799 S.W.2d 15, 19 (Ky. 1990)).

### 2. *Plaintiff's Knowledge of the Cause of Action at Issue*

The parties disagree not only as to which facts Plaintiff knew and when, but also the general standard for the requisite knowledge that triggers the one-year limitations period. (*Compare* Def.'s Mot. Dismiss 14-15, *with* Pl.'s Am. Resp. Mot. Dismiss 7). Plaintiff contends that she first discovered the "negligent drafting" of the Eitel Trusts by SKO's predecessor when she read this Court's final order in *Eitel v. PNC*, as this is when the Trustees supposedly shifted the blame of the trust mismanagement from themselves to SKO. (Am. Compl. ¶ 8). Plaintiff states that this is when she discovered SKO's breach of the duty owed to her grandparents and the indirect duty owed to her through the drafting of the Eitel Trusts. (Am. Compl. ¶ 8). Thus, Plaintiff submits that the one-year limitations period began February 24, 2023 (i.e., the date of this Court's ruling in *Eitel v. PNC*). Plaintiff relies on *Peoples Bank of Northern Kentucky, Inc. v. Crowe Chizek & Co.*, 277 S.W.3d 255 (Ky. App. 2008), in which the Kentucky Court of Appeals recognized that "mere knowledge of some elements of a tort claim, such as negligence without harm, is insufficient to begin running the limitations period where the cause of action does not yet exist." *Id.* at 264 (citing *Michels v. Sklavos*, 869 S.W.2d 728, 731-32 (Ky. 1994)). Plaintiff insists knowledge of her claims against the Trustees, but not SKO, would not have triggered the start of the limitations period. Thus, Plaintiff believes the limitations period expired on February 24, 2024, and that her initial Complaint in the current case filed on August 1, 2023, was timely.

Conversely, SKO urges that Plaintiff's one-year limitations period began to run when Plaintiff discovered the injury itself, i.e., the alleged mismanagement of the Eitel Trusts. SKO argues that Plaintiff "is deemed to have had actual or constructive notice of her claims when she

8

had actual or constructive notice of her alleged injury. It is not necessary that Ms. Eitel knew the identity of the person causing her alleged injury . . . ." (Def.'s Mot. Dismiss 15). In support, SKO relies on *Conway v. Huff*, 644 S.W.2d 333 (Ky. 1982), and *Wolfe v. Kimmel*, 681 S.W.3d 7 (Ky. 2023). *Conway* involved a malpractice claim against an attorney who allegedly negligently represented the plaintiff in a divorce action. *Conway*, 644 S.W.2d at 334. Under KRS 413.245, the defendant argued that the one-year limitations period began to run on "the date that [the plaintiff] was told that she had been poorly or inadequately represented." *Id.* The plaintiff contended that the period began to run approximately six weeks later, when she was told by another attorney "that she had a legal malpractice claim against [the defendant]." *Id.* The Kentucky Supreme Court, relying on the "discovery" prong of KRS 413.245, agreed with the defendant holding that the one-year period begins to run when the plaintiff learned that she had been wronged, not when she became aware that the wrong was actionable. *Id.*

*Wolfe v. Kimmel* presents a recent development in Kentucky's accrual and discovery rules under KRS 413.245. In *Wolfe*, the Kentucky Supreme Court held that "for a non-litigation, legal malpractice claim, the occurrence date limitation begins to run when negligence and damages have both occurred." *Wolfe*, 681 S.W.3d at 26. Similar to *Conway*, the Court held that the limitations period began to run when the plaintiff was "advised by another attorney of [the defendant's] malpractice," as this was the point at which the plaintiff had knowledge that "negligence and damages have both occurred." *Id*. Regarding the requisite specificity of damages, the Court explained that damages must flow from an injury that is "irrevocable and non-speculative" for the limitations period to accrue. *Id*. at 13 (quoting *Nw. Nat'l Ins. Co. v. Osborne*, 610 F. Supp. 126, 128 (E.D. Ky. 1985)). The Court further clarified that "Kentucky law has never required that damages be ascertainable in a specific dollar amount to state a cause of action for professional

9

negligence." *Id*. at 25.  Rather, "damages are considered irrevocable and non-speculative when the claimant is reasonably certain that damages will indeed flow from the defendant's negligence." *Id*. at 26.

Although Plaintiff asserts that she could not have known prior to February 2023 that the "Trustees justified almost the entirety of their tortious conduct due to the negligent drafting of [trust documents] . . . by SKO['s] predecessor", Plaintiff was certainly aware of the alleged injury before this Court's ruling in *Eitel v. PNC* in February 2023.  (Am. Compl. ¶ 8).  In fact, the injury at issue here is the same injury for which she sought recovery in *Eitel v. PNC*.  Plaintiff relies on that case's 2023 ruling as the first instance that she acquired knowledge of SKO's involvement in the alleged misconduct.  Applying *Conway*, however, what matters is when Plaintiff knew that she had been harmed—not when she realized she may have a viable claim against SKO.

While Plaintiff correctly recognizes that "negligence without harm[] is insufficient to begin running the limitations period," her complaint in *Eitel v. PNC* establishes that Plaintiff was aware of both negligence and harm for more than one year before this case was filed.  (Pl.'s Am. Resp. Def.'s Mot. Dismiss 11 (quoting *Peoples Bank*, 277 S.W.3d at 264)).  In fact, she specifically pled in that case that the Trustees allowed valuable assets to be sold or transferred to others instead of preserving the assets for Plaintiff's benefit as an intended generation-skipping beneficiary, which damaged her "to a severe degree."  Pl.'s Compl. ¶¶ 91-94, *Eitel v. PNC Bank, N.A.*, No. 3:20-CV-12-RGJ (W.D. Ky. Jan. 8, 2020), DN 1; Pl.'s Am. Compl. ¶¶ 106-09, *Eitel v. PNC Bank, N.A.*, No. 3:20-CV-12-RGJ (W.D. Ky. Feb. 26, 2020), DN 34.  In Plaintiff's second amended complaint in that case, she alleged that the Trustees "failed to adequately monitor or trace the distributed funds to determine if such distributions were truthfully being utilized for the purposes stated by

Junior, leading to massive misappropriation and loss to Plaintiff." Pl.'s 2d Am. Compl. ¶ 110, *Eitel v. PNC Bank, N.A.*, No. 3:20-CV-12-RGJ (W.D. Ky. Dec. 14, 2020), DN 104.

Thus, Plaintiff's complaint in *Eitel v. PNC* reflects that she knew of the allegedly improper distributions from the Eitel Trusts and the significant damage she suffered due to transfers from the Trusts before she brought suit in 2020. That complaint also alleges "improper principal encroachments" on the assets of the Eitel Trusts, further indicating that Plaintiff was aware of this alleged injury far more than one year before the present action was commenced in August 2023. Pl.'s 2d Am. Compl. ¶ 183, *Eitel v. PNC Bank, N.A.*, No. 3:20-CV-12-RGJ.

Plaintiff's failure to identify SKO as a responsible party does not change the date as to when the statute of limitations began to run under KRS 413.245—that is, the date at which the injury was discovered or should have been discovered. In *Conway*, the Kentucky Supreme Court analogized the discovery rule for legal malpractice to the medical malpractice context:

> Does the statute start to run when the surgery patient discovers the sponge or when an attorney tells the patient that legal action lies against the surgeon? Obviously the answer must be with the discovery that a wrong has been committed and not that the party may sue for the wrong.

*Conway*, 644 S.W.2d at 334.

The Plaintiff's complaints in *Eitel v. PNC* establish that by 2020, she knew about the sale of the PPC stock from the Eitel Trusts and that she was injured by the sale of that stock in 1982.[7]

---

[7] Regarding the improper sale of the PPC stock, Plaintiff contends that SKO has made "zero citation to any actual evidence of [Plaintiff's] knowledge of PPC stock in the portfolio whatsoever." (Pl.'s Am. Res. Def.'s Mot. Dismiss 7). Indeed, SKO relies on this Court's ruling in *Eitel v. PNC* that "Plaintiff through her role as stockbroker had knowledge of the sale of the Porter Paint in the 1980s." *Eitel*, 2023 WL 2230866, at *17. The parties disagree on the extent to which Plaintiff was involved in the Eitel Trusts' stock transactions. (*Compare* Def.'s Mot. Dismiss 6, *with* Pl.'s Am. Res. Def.'s Mot. Dismiss 7-8). Moreover, Plaintiff claims that the finding in *Eitel v. PNC* of her role as her father's stockbroker "mistakenly missed clear evidence demonstrating this alleged PPC knowledge to be completely false." (Pl.'s Am. Resp. Def.'s Mot. Dismiss 7). It is unnecessary to consider this Court's decision in *Eitel v. PNC* in ruling on the

Pl.'s 2d Am. Compl. ¶ 50, *Eitel v. PNC Bank, N.A.*, No. 3:20-CV-12-RGJ (W.D. Ky. Dec. 14, 2020) (alleging that "[Trustee] knew it was ill-advised to sell the Porter Paint Co. stock . . . ."). Nevertheless, Plaintiff argues that her "claims pertaining to the Porter stock did not become fixed until the *Eitel v. PNC* Court ruled the encroachment provisions were broad and not ascertainable standards on February 24, 2023." (Pl.'s Am. Res. Def.'s Mot. Dismiss 13).  This reasoning does not comport with the standard delineated in *Wolfe* that "damages are considered irrevocable and non-speculative when the claimant is reasonably certain that damages will indeed flow from the defendant's negligence."  *Wolfe*, 681 S.W.3d at 26.  By filing the complaint in *Eitel v. PNC* in 2020, Plaintiff demonstrated that she believed the wrongful sale of the PPC stock had resulted in damages, thus making them "irrevocable and non-speculative" in the context of triggering the limitations period in KRS 413.245.

In sum, Plaintiff relies on *Eitel v. PNC* to show that she was unaware of SKO's involvement in her alleged injury until February 2023.  This reliance is misplaced, however, as the pleadings in *Eitel v. PNC* show that Plaintiff was aware of the alleged injuries by no later than January 2020. Under Kentucky law, the statute of limitations for professional malpractice begins either at the occurrence of the alleged injury or the date which a plaintiff knew or should have known about the injury.  It is clear that Plaintiff had this requisite knowledge more than one year before she filed this action, and thus, all three of her claims against SKO are barred.

    **3.**    ***Equitable Tolling***

Plaintiff submits that tolling doctrines apply to her claims, asserting that SKO "prevented [Plaintiff] from discovering both the breaches and potential fixed nonspeculative damage," "hid[]

---

present motion because it is Plaintiff's allegations in the pleadings in *Eitel v. PNC*, not the facts determined on dispositive motions, that control here.

their beliefs which make the basis of [Plaintiff's] Complaint," and "may have spoliated the evidence in their files." (Pl.'s Am. Resp. Def.'s Mot. Dismiss 18).[8] This is entirely speculation and conjecture; no facts are alleged in any of Plaintiff's pleadings that would support the application of equitable tolling against SKO. As outlined above, however, Plaintiff was clearly aware of her alleged injury when she brought claims against the Trustees in 2020. Therefore, because any potential prior acts of SKO could not change this fact, Plaintiff's claims are time-barred by KRS 413.245.

### B. Count II: Aiding and Abetting Breach of Fiduciary Duty

Although all three of Plaintiff's claims are time-barred, SKO also challenges whether Count II states a claim for aiding and abetting. Kentucky law recognizes claims for aiding and abetting breaches of fiduciary duty. *Miles Farm Supply, LLC v. Helena Chem. Co.*, 595 F.3d 663, 665-66 (6th Cir. 2010). In this regard, Kentucky follows the Restatement (Second) of Torts, which defines aiding and abetting with the following elements: (1) the existence of a breach of a fiduciary relationship; (2) the defendant gave the breaching party "substantial assistance or encouragement" in effectuating the breach; and (3) the defendant knew that the party's conduct breached that fiduciary duty. *Id.* at 666 (citing Restatement (Second) of Torts § 876(b)).

---

[8] Plaintiff also claims she has been disabled since 2017, which she failed to mention until her amended response, so the statute of limitations should be tolled under KRS 413.245. (Pl.'s Am. Resp. Mot. Dismiss 19). Plaintiff contends that Exhibit M (DN 24-14) contains evidence that she has a disability that "prevents her from comprehending matters sufficient to trigger a statute of limitation on a complex matter." (Pl.'s Am. Resp. Mot. Dismiss 19 n.63). While Exhibit M does indicate that Plaintiff "struggles with multitasking," it also reflects that she "is bright" and "can manage money without help." (Pl.'s Resp. Def.'s Mot. Dismiss Ex. M, at 6-7, DN 24-14). Strangely, Plaintiff does not appear to have raised this issue prior to the ruling in *Eitel v. PNC*, which has been litigated extensively since 2020. Regardless, Plaintiff fails to demonstrate how any disability alluded to in a 2017 disability claim evaluation constitutes a legal disability under KRS 413.245. Therefore, the statute of limitations is not tolled.

13

Notably, PNC, the party which SKO allegedly aided in breaching a fiduciary duty and which ended its duties under the Trusts in 1994, is not a party in this action. (*See* Am. Compl.); *Eitel*, 2023 WL 2230866, at *3. This Court dismissed Plaintiff's claims against PNC as time-barred and did not reach the questions of whether PNC owed any duties to Plaintiff or whether any breach occurred. *Eitel*, 2023 WL 2230866, at *13-15, *17-18. Here, Plaintiff asserts that PNC owed a fiduciary duty to Plaintiff as beneficiary of a trust managed by PNC. (Am. Compl. ¶¶ 40-46). Plaintiff also alleges that through failing to provide materials about the Eitel Trusts, allowing dispersion of principal before termination of the Eitel Trusts, and other actions, PNC breached its fiduciary duties. (Am. Compl. ¶¶ 40-46).

For the second element (i.e., the defendant gave the breaching party "substantial assistance or encouragement" in effecting the breach), Plaintiff repeatedly states that SKO "fail[ed] to" perform various actions which, she claims, would have averted the current controversy. (Am. Compl. ¶¶ 40-46). These facts are insufficient under Kentucky's and the Restatement's aiding and abetting elements.[9] At no point does Plaintiff allege that SKO took an active—i.e., malfeasant—role in PNC's alleged breach of fiduciary duty. (Am. Compl. ¶¶ 40-46). The claims of "not counseling," "failing to advise," and "permitting" are all passive actions and do not satisfy the requirement of substantial *assistance* or *encouragement*. *See Insight Ky. Partners II, L.P. v. Preferred Auto. Servs., Inc.*, 514 S.W.3d 537, 547 (Ky. App. 2016) (holding even mere routine professional services is not enough to establish proximate cause or *substantial* assistance); *Budsgunshop.com, LLC v. Sec. Safe Outlet, Inc.*, No. 5:10-cv-00390-KSF, 2012 WL 1899851, at *20 (E.D. Ky. May 23, 2012) (holding that a company *instructing* a new employee to take a client

---

[9] Foreseeability is not required, and whether the aid was given knowingly or unknowingly is immaterial, but the aid must be active in the sense that it is "encouragement" or "assistance," which Plaintiff does not plead. *See* Restatement (Second) of Torts § 876 cmt. b.

14

list before leaving the previous employer sufficiently pled substantial *assistance* or *encouragement* in committing breach of fiduciary duty to previous employer); (Am. Compl. ¶¶ 40-46). Plaintiff alleges nonfeasance where malfeasance is required. Accordingly, Plaintiff has failed to state a claim for aiding and abetting breach of fiduciary duty, and Count 2 is dismissed on these grounds as well.

### C. Count III: Breach of Fiduciary Duty

SKO also contends that Plaintiff has failed to establish that SKO owed her a fiduciary duty. This claim is based on the premise that SKO breached its fiduciary duty to Plaintiff through a combination of professional malpractice and aiding and abetting PNC's breach of fiduciary duty. (Am. Compl. ¶¶ 47-48). Plaintiff also makes other assertions, including that SKO failed to disclose the Eitel Trusts to her, failed to advise her, and allowed the sale of PPC stock. (Am. Compl. ¶¶ 47-48).

Unlike the claim for aiding and abetting, however, accusations of nonfeasance can be sufficient to plead breach of fiduciary duty. *See Abbott v. Chesley*, 413 S.W.3d 589, 601 (Ky. 2013) (finding breach of fiduciary duty where defendant allowed business associates to retain more money than the amount to which they were entitled). SKO disputes that it owed a fiduciary duty to Plaintiff because it did not represent her during the creation of the Eitel Trusts. (Def.'s Mot. Dismiss 19). To establish a breach of fiduciary duty claim, a plaintiff must prove: (1) the existence of a fiduciary duty; (2) the breach of that duty; (3) injury; and (4) causation. *Baptist Physicians Lexington, Inc. v. New Lexington Clinic, P.S.C.*, 436 S.W.3d 189, 193 (Ky. 2013).

Under Kentucky law, an attorney-client relationship is "contractual one, either expressed or implied by the conduct of the parties." *Tipton v. Porter*, No. 2009-CA-001222-MR, 2010 WL 3641233, at *3 (Ky. App. Sept. 17, 2010) (quoting *Daughtery v. Runner*, 581 S.W.2d 12, 16 (Ky.

15

App. 1978)). An attorney-client relationship, while contractual, is also fiduciary in nature and "subjects the attorney to the duties of honesty, loyalty, and good faith." *Abbott*, 413 S.W.3d at 600 (citation omitted). Plaintiff does not allege that there was an express attorney-client relationship between her and SKO, nor does she claim any implied attorney-client relationship with SKO. (*See* Am. Compl. ¶¶ 25-51). Plaintiff instead asks the Court to subscribe to a "flowing" theory of fiduciary duty, under which the fiduciary relationship "flows" through attorney-client (SKO and the Eitel family) to trustee (PNC) to beneficiary (Plaintiff). (Pl.'s Am. Resp. Def.'s Mot. Dismiss 29).

While Kentucky courts apparently have not addressed this precise issue, case law regarding third-party beneficiaries asserting professional malpractice claims does not support Plaintiff's position. Kentucky recognizes that breach of fiduciary duty and malpractice claims may overlap, but that "a breach-of-fiduciary-duty claim focuses on whether an attorney obtained an improper benefit from representing the client, while a negligence claim focuses on whether an attorney represented a client with the requisite level of skill." *Lawrence v. Bingham Greenebaum Doll, L.L.P.*, 599 S.W.3d 813, 827 (Ky. 2019) (internal quotation marks omitted) (citation omitted). Kentucky has allowed non-clients to assert breach of fiduciary duty claims, but only for claims by real parties in interest and statutory beneficiaries, like wrongful-death beneficiaries. *Reynolds v. Randolph*, No. 2016-CA-001163-MR, 2018 WL 5304451, at *6 (Ky. App. Oct. 26, 2018); *see also Seiller Waterman, LLC v. RLB Props., Ltd.*, 610 S.W.3d 188, 201 (Ky. 2020). The reasoning here is that an "attorney has a direct relationship with the statutory beneficiaries and owes the same professional *and* fiduciary duties that the attorney owes to all his clients." *Reynolds*, 2018 WL 5304451, at *7 (emphasis added) (quoting *Pete v. Anderson*, 413 S.W.3d 291, 297-301 (Ky. 2013)).

n/a
n/a
n/a
n/a

Because Plaintiff did not have an attorney-client relationship with SKO and has offered no support for her theory that SKO otherwise owed her a fiduciary duty, Plaintiff has failed to state a claim for breach of fiduciary duty. This claim is dismissed on this basis.

## V.  CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Leave to File an Amended Response (DN 31) is **GRANTED**.

2. Defendant's Motion to Dismiss (DN 21) is **GRANTED**, and Plaintiff's claims are **DISMISSED WITH PREJUDICE**.[10]

3. The Clerk shall strike this matter from the active docket.

Greg N. Stivers, Chief Judge
United States District Court

September 25, 2024

cc:   counsel of record

---

[10] "When a motion to dismiss a complaint is granted, courts typically permit the losing party leave to amend." *Brown v. Matauszak*, 415 F. App'x 608, 614-16 (6th Cir. 2011) (quoting *PR Diamonds, Inc., v. Chandler*, 364 F.3d 671, 698 (6th Cir. 2004)). Indeed, the practice of dismissing a claim "with prejudice and without leave to amend is not appropriate unless it clear on *de novo* review that the complaint could not have been saved by an amendment." *Burkeen v. A.R.E. Accessories, LLC*, 758 F. App'x 412, 416 (6th Cir. 2024) (internal quotation marks omitted) (quoting *Newberry v. Silverman*, 789 F.3d 636, 645-46 (6th Cir. 2015)). In the current case, it is clear that granting Plaintiff an additional opportunity to further amend her claims would be futile. *See Foman v. Davis*, 371 U.S. 178, 182 (1962) (delineating "futility of amendment" as an "apparent or declared reason" to not grant the leave to amend). There is a "well-established preference for allowing claims to be decided on their merits where possible", but that preference cannot be upheld in the current case, where the Court has found that Plaintiff was aware of her injury for a longer period of time than the limitations period dictated by KRS 413.245. *Burkeen*, 758 F. App'x at 416.

17