UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:23-CV-00398-GNS

MARY EITEL                                                                                              PLAINTIFF

v.

STOLL, KEENON, OGDEN PLLC
as successors-in-interest to Ogden, Robertson, Marshall                     DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on Plaintiff's Motion to Reconsider (DN 41). The motion is ripe for adjudication. For the reasons stated below, the motion is **DENIED**.

## I.   BACKGROUND

This case concerns allegations by Plaintiff Mary Eitel ("Plaintiff") that the predecessors of Defendant Stoll Keenon Ogden ("Defendant")[1] negligently drafted three trust agreements (collectively the "Eitel Trusts") created in the 1960s and 1970s by Plaintiff's grandparents, Paul T. Eitel Sr. and Berenice L. Eitel. (Am. Compl. ¶ 6). In a related 2020 case filed in this Court, Plaintiff sued fourteen defendants ("Trustees"), each of whom was allegedly responsible for managing the Eitel Trusts for some period of time over the past several decades.[2] *See Eitel v. PNC Bank, N.A.*, No. 3:20-CV-12-RGJ, 2023 WL 2230866 (W.D. Ky. Feb. 24, 2023) [hereinafter *Eitel v. PNC*].[3]

---

[1] The firm was previously known as Ogden, Sturgill & Welch; Ogden & Robertson; Ogden Robertson & Marshall; and Ogden, Brown, Robertson & Marshall. (Am. Compl. ¶¶ 3, 5, DN 15).
[2] The Eitel Trusts were initially managed by First Kentucky Trust Co., currently known as PNC Bank ("PNC"). (Am. Compl. ¶¶ 2, 6).
[3] A detailed discussion of the timeline of events and Plaintiff's complaints related to the establishment and management of the Trusts is set forth in the memorandum opinion and order in *Eitel v. PNC*. *See id.* at *1-9.

1

In *Eitel v. PNC*, Plaintiff contended that she was injured by the Trustees' mismanagement of the Eitel Trusts, alleging trust assets, including Porter Paint Company ("PPC") stock, was sold in the 1980s for an unfairly low price and that principal funds were improperly distributed over many years to her stepmother and father, Paul Eitel Jr. ("Junior"). *Eitel v. PNC*, 2023 WL 2230866, at *4. Plaintiff's claims in *Eitel v. PNC* and in the current case are based on her assertion that her grandparents intended the Eitel Trusts to be generation-skipping (i.e., primarily to benefit their grandchildren, including Plaintiff), and thus the sale of PPC stock and distributions from the principal violated this purpose. (Am. Compl. ¶¶ 6-8, 28). The court granted summary judgment for the Trustees in *Eitel v. PNC* on Plaintiff's claims of breach of fiduciary duty, negligence, breach of duty of good faith and fair dealing, and RICO violations. *Id*. at *22. The Court held that each of these claims against the Trustees had either been abandoned or were barred by the statute of limitations, as Plaintiff had actual or constructive knowledge of her alleged injuries by the various defendants at least 16 years prior to bringing the suit. *Id.* at *10-13. Plaintiff subsequently moved the Court to reconsider its holding in *Eitel v. PNC*, which was denied. *Eitel v. PNC Bank, N.A.*, No. 3:20-CV-12-RGJ, 2024 WL 4361962, at *10 (W.D. Ky. Sept. 30, 2024).

In the current case, Plaintiff argued that Defendant committed professional malpractice by negligently drafting the Eitel Trusts and failing to properly advise the Trustees (Count I); that Defendant aided and abetted PNC's breach of fiduciary duties (Count II); and that these actions also constitute a breach of Defendant's fiduciary duty to her (Count III). (Am. Compl. ¶¶ 26, 35, 42). All these claims are asserted under Kentucky statutes and common law. (Am. Compl. ¶¶ 25-51). Defendant filed a motion to dismiss (DN 21), which the Court granted and dismissed all of Plaintiff's claims with prejudice. (J. 1, DN 40 [hereinafter Final Order]). The Court dismissed all three claims on the basis they were barred by the statute of limitations as well as Counts II and III

on the basis that Plaintiff failed to state a claim for which relief could be granted. (Mem. Op. & Order 12, 15-17, DN 38). Plaintiff has moved the Court to reconsider the Final Order. (Pl.'s Mot. Reconsider 1, DN 41).

## II.     JURISDICTION

The Court has subject matter jurisdiction over this action under 28 U.S.C. § 1332 as there is complete diversity between the parties and the amount in controversy exceeds the sum of $75,000.00.

## III.     STANDARD OF REVIEW

Plaintiff has moved to reconsider the Final Order under Fed. R. Civ. P. 59 and 60. (Pl.'s Mot. Reconsider 1). Pursuant to Fed. R. Civ. P. 59(e), "[a] district court may alter or amend its judgment based on '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 841 (6th Cir. 2018) (citation omitted). A motion to reconsider "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Id.* (quoting *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008)).

Under Rule 60(b), the Court may relieve a party from a final judgment or order for the following reasons:

> (1)    mistake, inadvertence, surprise, or excusable neglect;
> (2)    newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);
> (3)    fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;
> (4)    the judgment is void;
> (5)    the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or
> (6)    any other reason that justifies relief.

Fed. R. Civ. P. 60(b). "Rule 60(b) does not afford defeated litigants a second chance to convince the court to rule in his or her favor by presenting new explanation, new legal theories, or proof." *Burnley v. Bosch Ams. Corp.*, 75 F. App'x 329, 333 (6th Cir. 2003) (citation omitted). Further, "relief under Rule 60(b) is 'circumscribed by public policy favoring finality of judgments and termination of litigation.'" *Blue Diamond Coal Co. v. Trs. of the UMWA Combined Benefit Fund*, 249 F.3d 519, 524 (6th Cir. 2001) (quoting *Waifersong Ltd., Inc. v. Classic Music Vending*, 976 F.2d 290, 292 (6th Cir. 1992)).

## IV.   **DISCUSSION**

Plaintiff does not state explicitly under which provisions of Fed. R. Civ. P. 59 or 60 she brings her motion, but asserts that the "Final Order misapplies the law and misconstrues the facts by which [Plaintiff] seeks redress against [Defendant]." (Pl.'s Mot. Reconsider 1). She also mentions that "[u]nder Rule 59/60, a movant must show the Court's decision was 'clearly erroneous.'" (Pl.'s Mot. Reconsider 2). These allegations will be interpreted as an argument for "clear error of law" under Fed. R. Civ. P. 59(e). She also contends that Defendant's "unclean hands and conduct in *Eitel v. PNC* contributed to the delayed discovery of claims against [it]." (Pl.'s Mot. Reconsider 15). This will be interpreted as an argument for "fraud, . . . misrepresentation, or misconduct by an opposing party" under Fed. R. Civ. P. 60(b)(3). Lastly, she relies on a new report of Dr. Daniel Miller ("Dr. Miller"), a psychologist, which the Court will interpret as an argument for "newly discovered evidence" under Fed. R. Civ. P. 59(e)(2) and 60(b)(2), as it was not filed until after the Final Judgment was issued. (Pl.'s Mot. Reconsider Ex. A, DN 41-1 [hereinafter 2024 Miller Report]).

### A. Fraud, Misrepresentation, or Misconduct by Defendant

Plaintiff claims that Defendant should be estopped from raising a limitations defense because its "unclean hands and conduct in *Eitel v. PNC* contributed to the delayed discovery of claims against [it]." (Pl.'s Mot. Reconsider 15). Plaintiff cites no caselaw but posits that Defendant's "own participation [in *Eitel v. PNC*] in failing to plead its own negligence as an affirmative defense to the breach of trust claims against its client, SSB [i.e., the defendant in that case]" stymied Plaintiff's ability to discover her cause of action. (Pl.'s Mot. Reconsider 15). As Defendant points out, this "unclean hands" argument is a reiteration of her equitable tolling argument based upon Defendant's alleged "false representation or fraudulent concealment", raised in her response to Defendant's motion to dismiss. (Def.'s Resp. Pl.'s Mot. Reconsider 13, DN 44; Pl.'s Am. Resp. Def.'s Mot. Dismiss 17-18, DN 31-1). The Court has already found that these allegations are "entirely speculation and conjecture" and do not merit the tolling of the statute of limitations. (Mem. Op. & Order 12-13).

Even if this reasoning was distinct from her equitable tolling arguments, Plaintiff should have raised it in her initial response and the Court will not consider new arguments on a motion to reconsider. *Elec. Ins. Co. v. Freudenberg-Nok, Gen. P'ship*, 487 F. Supp. 2d 894, 902 (W.D. Ky. 2007) ("Motions [to reconsider] are not an opportunity for the losing party to offer additional arguments in support of its position." (citation omitted)); *see also Tyler v. Anderson*, 749 F.3d 499, 509 (6th Cir. 2014) ("Rule 60(b) does not allow a defeated litigant a second chance to convince the court to rule in his or her favor by presenting new explanations, legal theories, or proof." (citation omitted)). This argument, therefore, fails to justify reconsideration under Fed. R. Civ. P. 59(e) and 60(b).

### B. Newly Discovered Evidence

Plaintiff submits the 2024 Miller Report as evidence of her alleged disability. (Pl.'s Mot. Reconsider 4-5; 2024 Miller Report). Plaintiff's general assertion that she has a legal disability that tolls the statute of limitations under KRS 413.245 was addressed in the Final Order, and discussion regarding whether the Court's determination constitutes clear error of law will be addressed in the section below. First, the Court must determine if the 2024 Miller Report should be considered as "newly discovered evidence" for Plaintiff's reconsideration motion. For the report to be considered new evidence under Rule 60(b)(2), Plaintiff "must demonstrate (1) that [she] exercised due diligence in obtaining the information and (2) [that] the evidence is material and controlling and clearly would have produced a different result if presented before the original judgment." *JPMorgan Chase Bank, N.A. v. First Am. Title Ins. Co.*, 750 F.3d 573, 584-85 (6th Cir. 2014) (second alteration in original) (internal quotation marks omitted) (quoting *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 615 (6th Cir. 2012)). To prevail under Rule 59(e), "newly discovered evidence must have been previously unavailable." *HDC, LLC*, 675 F.3d at 615 (internal quotation marks omitted) (quoting *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).

Plaintiff first mentioned her alleged disability in her response to Defendant's motion to dismiss, attaching a 2017 telephone dictation report from Dr. Miller regarding Plaintiff's "mental status examination." (Pl.'s Resp. Def.'s Mot. Dismiss Ex. M, at 1-4, DN 24-14 [hereinafter, 2017 Miller Report]). Plaintiff submitted this same report in her motion to reconsider in *Eitel v. PNC* on March 24, 2023, over four months before bringing this current action against Defendant. (*Eitel*

*v. PNC*, Mot. for Reconsider Ex. 5, DN 430-5).[4]  Plaintiff contended that the 2017 Miller Report contains evidence that she has a disability that "prevents her from comprehending matters sufficient to trigger a statute of limitation on a complex matter." (Pl.'s Am. Resp. Def.'s Mot. Dismiss 19 n.63).  The Court denied this proposition for two reasons:  (1) contrary to Plaintiff's contention, the 2017 Miller Report actually indicated that Plaintiff "is bright" and "can manage money without help," only noting that Plaintiff "struggles with multitasking." (Mem. Op. & Order 13 n.8 (citing 2017 Miller Report 6-7)).  Second, Plaintiff's response to Defendant's motion to dismiss "fail[ed] to demonstrate how any disability alluded to in [the 2017 Miller Report] constitutes a legal disability under KRS 413.245." (Mem. Op. & Order 13 n.8).  Simply put, there was no specificity in Plaintiff's response regarding her alleged disability—the entire argument consisted of two sentences stating that her "disability prevents her from understanding complex matters" and a footnote reiterating the same vague assertion with citation to the 2017 Miller Report. (Pl.'s Am. Resp. Def.'s Mot. Dismiss 19 n.63).

Now, Plaintiff has filed the 2024 Miller Report, which she claims supports "her assertions [that] the statute of limitations does not apply to deny her claims against [Defendant]." (Pl.'s Mot. Reconsider 3).  Plaintiff posits that the 2024 Miller Report confirms that she "has been afflicted with severe ADHD her entire life, and PTSD since 2004 stemming from guardianship proceedings involving her mother . . . ." (Pl.'s Mot. Reconsider 4-5).  Defendant argues that the 2024 Miller Report should not be considered as newly discovered evidence because Plaintiff "did not exercise reasonably diligence in obtaining" the report. (Def.'s Resp. Pl.'s Mot. Reconsider 5-6).  Defendant

---

[4] In *Eitel v. PNC*, this court denied Plaintiff's motion for reconsideration and refused to treat the 2017 Miller Report as newly discovered evidence under Rule 60(b)(2), stating that "[b]ecause Plaintiff fails to demonstrate that she exercised diligence in obtaining the report, the Court need not address whether it is material. However, it is unlikely the report would be material in undoing her deposition testimony." *Eitel v. PNC*, 2024 WL 4361962, at *4.

7

states that Plaintiff "had ample opportunity to obtain proper evidence of her alleged legal disability to contest [Defendant's] Motion to Dismiss long before the entry of this Court's Judgment on September 26, 2024, but instead she waited until October 2024 – after this Court's Judgment – to obtain and tender a new report documenting her alleged disability." (Def.'s Resp. Pl.'s Mot. Reconsider 7).[5]

Plaintiff rebuts Defendant's argument by stating that although "the newly discovered facts of the 2024 Miller Report did in fact exist at the time of this Court's dismissal of Mary's live complaint, [] such report was not available with due diligence . . . ." (Pl.'s Reply Mot. Reconsider 10, DN 45). Plaintiff avers, as purportedly supported by the 2024 Miller Report, that she "is not capable of due diligence." (Pl.'s Reply Mot. Reconsider 10). She states that one purpose of obtaining the 2024 Miller Report was to "explain[] in more detail how [her] disability prevents her from handling her day-to-day affairs and [why] her disability went unnoticed [to] her [] for the entirety of her life until 2023 when she discovered the 2017 Miller Report findings for the first time." (Pl.'s Reply Mot. Reconsider 10). She also states that "[t]he 2024 Miller Report was not plausibly discoverable before [Plaintiff] filed her Rule 59/60 Motion because there was no indication which would have prompted such examination and findings until this Court determined

---

[5] Defendant also argues two additional reasons why the 2024 Miller report should not be accepted. First, Defendant contends that, even if the report were diligently obtained, it "does not establish a legal disability sufficient to toll the statute of limitations." (Def.'s Resp. Pl.'s Mot. Reconsider 9-10 (highlighting that the report indicates that Plaintiff's "cognitive function is well within normal limits.")). Second, Defendant correctly points out Plaintiff "brought her claims against [Defendant] and in *Eitel v. PNC* in her own name, and not through a guardian or next friend, as is required for a person who is legally disabled." (Def.'s Resp. Pl.'s Mot. Reconsider 10). Under Fed. R. Civ. P. 17 and Ky. R. Civ. P. 17.03, "persons of 'unsound mind' must bring suit through their guardian, committee, or next friend." *Wright v. Louisville Metro Gov't*, No. 3:21-CV-00308-BJB-CHL, 2024 WL 4432518, at *2 (W.D. Ky. June 17, 2024) (citation omitted). Plaintiff does not provide an explanation for how she is both legally disabled for the purposes of tolling the statute of limitations yet competent enough to bring this suit in her own name.

[Plaintiff's] claims accrued during the genesis of the *Eitel v. PNC* litigation." (Pl.'s Reply Mot. Reconsider 16).

Plaintiff does not elaborate how this explanation constitutes "due diligence" under Fed. R. Civ. P. 60(b). *JPMorgan Chase Bank, N.A.*, 750 F.3d at 584-85. In fact, she admits that she is not capable of due diligence, and that this is precisely the reason why the report was not timely procured. (Pl.'s Reply Mot. Reconsider 10). This circular approach cannot meet the standard of Rule 60, and Plaintiff cites no authority for why it should. Nor does Plaintiff provide any authority for how the 2024 Miller Report was "previously unavailable" under Fed. R. Civ. P. 59(e). *HDC, LLC,* 675 F.3d at 615 (citation omitted). Contrary to Plaintiff's contention that she was not prompted to seek this evidence until the Court ruled on Defendant's motion to dismiss, she was required to do so when Defendant initially raised the statute of limitations argument in its motion. She has conceded this sentiment: "when [the] statute of limitations is raised, then and only then does a claimant have an obligation to prove facts which would toll the statute of limitations." (Pl.'s Reply Mot. Reconsider 8 (citing *Se. Ky. Baptist Hosp. v. Gaylor*, 756 S.W.2d 467, 469 (Ky. 1988))). She unsuccessfully raised the argument in her response to Defendant's motion to dismiss; however, a motion to reconsider cannot be used "to raise arguments or present evidence that could have been raised prior to the entry of judgment." *Brumley*, 909 F.3d at 841 (citation omitted). The 2024 Miller Report does not contain information which was "previously unavailable"—it describes conditions of which Plaintiff was undoubtedly aware prior to the Court's Final Order. (*See* Pl.'s Am. Resp. Def.'s Mot. Dismiss 19 n.63). Accordingly, the Court will not consider it.

C. **Clear Error of Law**

Plaintiff's motion for reconsideration contains many reiterations of facts and arguments already settled in this Court's Final Order, as well as new arguments that should have been raised

9

in support for the same positions already analyzed. As mentioned previously, "Rule 60(b) does not afford defeated litigants a second chance to convince the court to rule in his or her favor by presenting new explanation, new legal theories, or proof." *Burnley*, 75 F. App'x at 333 (citation omitted). Additionally, "[a] Rule 59 motion 'may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment.'" *Brumley*, 909 F.3d at 841 (citation omitted). Therefore, the Court will only consider the portions of Plaintiff's motion that contend that the Court made a clear error of law.

### 1. *Applicable Statute of Limitations*

Plaintiff argues that this Court erred in granting Defendant's motion to dismiss based upon the statute of limitations set forth in KRS 413.245. (*See* Mem. Op. & Order 11-12). She posits that "Kentucky looks to medical malpractice case-law of discovery rule limitations to determine when the clock begins to run against a claimant." (Pl.'s Reply Mot. Reconsider 2 (citing *Conway v. Huff*, 644 S.W.2d 333, 334 (Ky. 1982))). This Court already recognized that the Kentucky Supreme Court in *Conway* "analogized the discovery rule for legal malpractice to the medical malpractice context" and found that the holding in that case weighed in favor of granting dismissal of Plaintiff's claims. (Mem. Op. & Order 11). Interestingly, Plaintiff also asserts that "*Conway* does not apply to [her] because the facts are so disparate and the relationships were far more direct, leading to earlier identification of the tortfeasor." (Pl.'s Mot. Reconsider 20). The holding from *Conway* is that "the statute start[s] to run . . . . with the discovery that a wrong has been committed and not that the party may sue for the wrong." *Conway*, 644 S.W.2d at 334. This Court found that "[b]y filing the complaint in *Eitel v. PNC* in 2020, Plaintiff demonstrated that she believed the wrongful sale of the PPC stock had resulted in damages, thus making them 'irrevocable and non-

speculative' in the context of triggering the limitations period in KRS 413.245." (Mem. Op. & Order 12 (citing *Wolfe v. Kimmel*, 681 S.W.3d 7, 26 (Ky. 2023))).

Plaintiff now "ask[s] the Court to see the wisdom in other medical malpractice cases as demonstrating the latency of the injury of [Defendant's] legal malpractice contained within the complex estate plans of [Plaintiff's] grandparents." (Pl.'s Mot. Reconsider 2). She claims that "modern medical malpractice case law demonstrates there is a distinct difference between a 'harm' and an 'injury,' and that applies here to [her] claims against [Defendant], which did not arise to the level of 'injury' until February 2023." (Pl.'s Mot. Reconsider 21). In this vein, she argues that "Kentucky law requires a certificate of merit requiring another physician to tell the Court that a claimant's claim has merit." (Pl.'s Mot. Reconsider 21). She provides no citation for this assertion, nor for the assertion that courts must apply the rules of medical malpractice to legal malpractice claims other than the analogy presented by the Kentucky Supreme Court in *Conway*, which she says is inapplicable for being too distinct. (Pl.'s Mot. Reconsider 20).

The law, as demonstrated in the Final Order, is clear: "for a non-litigation, legal malpractice claim, the occurrence date limitation begins to run when negligence and damages have both occurred." *Wolfe*, 681 S.W.3d at 26 (citation omitted). Thus, "[a] person who has knowledge of an injury is put on 'notice to investigate' and discover, within the statutory time constraints, the identity of the tortfeasor." *McLain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky. App. 1999) (citation omitted). Even if Plaintiff's case may be "more complex," this does not change when the statute began to run on her claims. Under Kentucky law, the statute began to run, at the latest, when Plaintiff was aware of her alleged injury by 2020 when she filed her complaint in *Eitel v. PNC*.

(Mem. Op. & Order 12). Plaintiff has provided no support for the notion that the Court clearly erred in making this determination.[6]

### 2. *Plaintiff's Alleged Disability*

Plaintiff also claims that the Court acted in clear error in rejecting her argument that her alleged disability tolled the statute of limitations. As mentioned previously, the Court will not consider the 2024 Miller Report as "newly discovered evidence." Nor will the Court entertain "arguments or [] evidence that could have been raised prior to the entry of judgment." *Brumley*, 909 F.3d at 841 (citation omitted). Thus, the only determination to make is whether the Court acted in clear error. Plaintiff's only argument for this proposition is that her disability is "at least sufficient to establish a fact-question which must go past dismissal stage and onto formal discovery and trial." (Pl.'s Mot. Reconsider 2). She argues that "[a] judicial determination of whether a legal disability has tolled the statute of limitations is a fact-question for the jury, not for use at the

---

[6] Plaintiff also argues that both "disputed inferences as to when a plaintiff discovered or should have discovered her cause of action" and "[w]hen a plaintiff is put on notice of an injury" are questions of fact for a jury to resolve. (Pl.'s Mot. Reconsider 6 (citing *Elam v. Menzies*, 594 F.3d 463, 467 (6th Cir. 2010); *3M Co. v. Engle*, 328 S.W.3d 184, 189 (Ky. 2010))). The Court need not accept factual allegations as true when they are clearly rebutted by evidence relied upon by the complaint itself. *Williams v. CitiMortgage, Inc.*, 498 F. App'x 532, 536 (6th Cir. 2012) ("[W]hen a written instrument contradicts allegations in the complaint to which it is attached, the exhibit trumps the allegations." (alteration in original) (quoting *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 454 (7th Cir. 1998))). In the current case, the pleadings from *Eitel v. PNC* clearly establish that Plaintiff was aware of her cause of action by 2020, at the latest. (Mem. Op. & Order 12). It is not inappropriate for a district court to reject factual assertions in a 12(b)(6) motion to dismiss that are "bare legal conclusions" or those which do not "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citation omitted); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). These arguments, therefore, fail to justify reconsideration of the Final Order.

dismissal stage of litigation." (Pl.'s Mot. Reconsider 3). She does not cite Kentucky law for this assertion.

It is important to note that the Court, in dismissing Plaintiff's claims, did not rule on whether Plaintiff suffers from a legal disability. Rather, the Court found that Plaintiff did not sufficiently present a plausible claim that (1) she suffers from a disability and (2) that disability would toll the statute of limitations. (Mem. Op. & Order 13 n.8). Plaintiff's entire argument within her response was too vague when she argued that her "disability prevents her from understanding complex matters[,]" and the 2017 Miller Report even undercut these assertions. (Pl.'s Am. Resp. Def.'s Mot. Dismiss 19 n.63; Mem. Op. & Order 13 n.8 (citing 2017 Miller Report 6-7)). These bare assertions cannot be construed as a viable claim for a legal disability, much less one that would toll the statute of limitations to demonstrate that the Court's ruling was clearly erroneous. *See Cain v. Thompson*, No. 3:19-CV-00181, 2020 WL 42897, at *3 (W.D. Ky. Jan. 3, 2020) ("Plaintiffs cannot rely on their own vagueness, however, to avoid a dismissal on statute of limitations grounds."). For these reasons, the motion is denied.

### V. CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Plaintiff's Motion to Reconsider (DN 41) is **DENIED**.

Greg N. Stivers, Chief Judge
United States District Court

June 5, 2025

cc: counsel of record